# Jackson *v.* Birmingham Foundry and Machine Company.

### *Bill to Abate a Nuisance.*

(Decided Feb. 4, 1908. 45 South. 660.)

1. *Statutes; Presumption of Constitutionality.*—A statute is presumed to be constitutional.

2. *Dedication; What Constitutes; Platting and · Sale of Lots.*—Where the owner of land plats it into lots and streets, and sells and conveys the lots with reference to the platting, it is a dedication of the streets although no efforts are afterwards made to prepare the streets for public us.

3. *Statutes; Constitutionality of; Closing Streets.*—Where there remained to the lot owner a convenient and raesonable outlet to neighboring thoroughaferse, an act authorizing a manufacturing corporation to close a portion of a certain street and to use the closed portion is not, as against the lot owner, violative of section 23, Constitution 1901.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Bill by J. F. B. Jackson against the Birmingham Foundry & Machine Company. From a decree in favor of defendant, complainant appeals. Affirmed.

JOHN H. MILLER, for appellant. The jurisdiction of a court of equity to abate a public nuisance is well established in our jurisdiction and a private person can maintain bill to abate such nuisance when it is shown that he has suffered a special injury different from that suffered by the public at large.—*Whaley v. Wilson,* 112 Ala. 627; *Roberts v. Matthews,* 137 Ala. 524; 9 A. & E. Ency. of Law, 63-64. On the question of laches and prescription,

[Jackson v. Birmingham Foundry and Machine Company.]

the court's attention is directed to the case of *Roberts v. Matthews, supra,* and *Reid v. Mayor & Aldermen of Birmingham,* 92 Ala. 339. The court's attention is also directed to the following cases as bearing on the demurrers.—Elliott on Roads & Streets, Sec. 659, p. 715; *Stetson v. Faxon,* 19 Pick. 147; *Mulger v. Kansas,* 123 U. S. 673; *Jones et als. v. Bright,* 37 South. Rep. p. 79; *Cabbell v. Williams,* 127 Ala. 324; *Pioneer Mining & Mfg. Co. v. Shamblin et als.,* 37 South. Rep. p. 391; *Whaley v. Wilson,* 112 Ala. 627; *Baltimore etc. R. R. Co. v. Pittsburg R. R. Co.,* 17 W. Va. 812. More especially note these two cases.—*Roberts et als. v. Matthews,* 137 Ala. 524, and *Reed v. Mayor and Aldermen of Birmingham,* 92 Ala. 339. Also *Gaynor v. Bauer,* 39 South. Rep., p. 7449; *Sloss-Sheffield Steel & Iron Co. v. Johnson,* 41 Sou. Rep., p. 907. The legislature had no authority to close up Bibb street and to give its use and occupation to the defendant, as attempted in Acts 96-7, p. 949; Cooley on Const. Lim. (6th Ed.), 652; Sec. 23, Const. 1901; *Sadler v. Langham,* 34 Ala. 311. This same principle is fully discussed again in the case of *Columbus Water Works Company v. Long et als.,* 121 Ala. 245; see also matter of *Albany et al.,* II Wend. 151, (s. c.) 25 Amer. Dec. 618; *Paul v. Detroit,* 32 Mich. 108; *Balt. R. R. v. Puto R. R.,* 17 W. Va. 812. In his great work on Roads and Streets (6th Edition), Sec. 22, page 22, Elliott says: "It is enough perhaps to say at this point that streets in which private rights and public interests have vested cannot be diverted to a *permanent private use."* The court will find helpful the late cases of *Cabbell v. Williams,* 127 Ala. 320; *Jackson et als. v. Snodgrass,* 37 Sou. Rep. 246; *Roberts et als. v. Matthews,* 137 Ala. 524; *Whaley v. Wilson,* 112 Ala. 627; *Jones v. Bright,* 140 Ala. 268; *Pioneer Min. & Mfg. Co. v. Shamblin et als.,*

30 R

140 Ala. 486; *Weiss et als. v. Taylor et als.,* 144 Ala. 440. But the appellee claims that its building had been there for eight or ten years and that it will suffer more by being made to remove its permanet obstructions from Bibb and Pickens streets than complainant will be benefitted by causing such removal. Neither estoppel nor the statute of limitations applies in this case or cases of this kind. Each day that the obstructions remain constitutes a public nuisance. In his work on Roads and Streets (2nd Edition), Sec. 659, page 706, Mr. Elliott says: "There can be no rightful permanent possession of a public highway for private purposes." * * * "No length of time will render a public nuisance, such as the obstruction of a highway, legal, or give the person guilty of maintaining it any right to continue it to the detriment of the public." Where a railroad company used a public street in such a manner that it became a nuisance to the owners of neighboring dwellings, it was held, "that such owners were entitled to an injunction although the use was authorized by the legislature and was necessary to the business of the company."—Elliott on Roads & Streets, 2nd Edition, Sec. 666, page 715; *Pa. R. R. Co. v. Angel,* 41 N. J. Eq. 316; *Cogswell v. New York, etc. R. R. Co.,* 103 N. Y. 10; *Jenks v. Lansing Lumber Co.,* 97 Iowa, 342; 66 N. W. Rep. 231.

S. D. & J. B. WEAKLEY, and E. K. CAMPBELL, for appellee. On the facts in this case, those owning the lots when the obstructions were made could not have relief in equity since they had an adequate remedy at law.— *Dennis v. M. & M. Ry. Co.,* 137 Ala. 649; *H. & B. Ry. Co. v. Matthews,* 99 Ala. 24. The damages accrued to them and did not pass to a subsequent vendee.—*Evans v. S. & W. Ry. Co.,* 90 Ala. 54. The legislature has the right

to close a street so as to surrender the public right.—
*Paul v. Carner*, 24 Penn. St. 207; *McGhee's App.* 114
Penn. St. 470. What the legislature authorizes cannot
become a public nuisance. The appellant was guilty of
laches in the assertion of his right.—*Clifton Iron Co. v.
Dye*, 87 Ala. 468; *Wharton v. Hamner*, 115 Ala. 518.

McCLELLAN, J.—This bill presents the complaint
of a proprietor of lots in an unincorporated suburb of
the city of Birmingham, and seeks the abatement of al-
leged public nuisances resulting from the asserted un-
lawful obstruction by respondent (appellee) of what
are called in the pleadings Bibb and Pickens streets.
While the bill complains against the obstruction of Pick-
ens street, the complainant, in his testimony, detailing
a conversation with President Boland, of the respondent
company, in which complainant made demand for the
removal of the obstruction from Bibb street, says: "I
don't recollect that I said anything to him about Pickens
street. I don't care anything about Pickens, if he would
open Bibb street. * * * [On cross-examination].
There is no graded street or highway through there [re-
ferring to Pickens street] and used by the public. * * *"
The testimony, on the whole, in the cause, compels the
conclusion that, because of a water course through that
part of Pickens street attingent or immediately near the
obstructed part, no public use of that section of Pickens
street could be or was made by the public. The answer
and testimony of the respondent shows that the fence
across Pickens street has been removed, though a part
of a wooden structure of respondent projects a few feet
into Pickens street, confessedly without right and as the
result of an error in the location of the line of respond-
ent's property abutting on this street at that point. Un-

[Jackson v. Birmingham Foundry and Machine Company.]

der these circumstances, pretermitting all other consid-
erations, it is impossible that complainant suffered any
damages to his lots in respect of the obstructions there-
tofore existing, or existing at the time the bill was filed,
in Pickens street. We therefore see no occasion to fur-
ther consider the cause as influenced by respondent's
treatment of Pickens street.

Early in the year 1888 the East Birmingham Land
Company sold and conveyed many lots in a suburb of
Birmingham called "East Birmingham, after having
first platted the area into lots and streets, among the
latter being Bibb and Pickens streets, which the plat-
ting shows to be 60 feet wide. The respondent's several
lots are described with express reference to these two
streets and to this platting. The sales of these and other
lots in the suburb by the named owning company oper-
ated an effective dedication and acceptance of Bibb and
Pickens streets as public thoroughfares; and this, re-
gardless of the entire absence of subsequent effort, if
so, to subdue nature and render the allotted spaces com-
fortable and convenient for use as streets.—*Demopolis
v. Webb*, 87 Ala. 659, 6 South. 408; Id. 95 Ala. 116, 13
South. 289, 21 L. R. A. 62; *Reed v. Mayor and Aldermen*,
92 Ala. 339, 9 South. 161. And it may be proper here
to state that no private right can be grounded upon the
failure of even constituted authority to move for the
abatement of a public nuisance created by an unwarran-
ted invasion of the public right to the unimpeded use of
a street.—*Demopolis v. Webb, supra; Costello v. State*,
108 Ala. 45, 18 South. 820, 35 L. R. A. 303.

The respondent constructed and maintains, within the
limits of what the platting shows to have been Bibb
street, some of its buildings, and has also for many years
fenced off that section of the platted street described in

the act of the General Assembly, to be quoted, in virtue of the effect of which the respondent defends its right to so hold and enjoy the space therein described. The act is as follows:

"An Act to authorize the closing and occupancy of a part of Bibb street as the same is designated and laid off according to the plat of the East Birmingham Land Company or its successors in Jefferson county.

"Section 1. Be it enacted by the General Assembly of Alabama, that the Birmingham Machine & Foundry Company as the owner of block number thirty-six and block number thirty-eight 'B' according to the plat of the East Birmingham Land Company, or its successors in Jefferson county, which two blocks of land abut on and are separated by what on said plat is desgnitade as Bibb street, a strip of land sixty feet wide, is hereby authorized to close said Bibb street by a fence or enclosure extending across said Bibb street from the southwest corner of block thirty-six to southeast corner of block thirty-eight 'B' and by a fence or enclosure extending across said street from northeast corner of block 38B to northwest corner of block thirty-six, thus making an enclosure of said two blocks and the said intervening street.

"Sec. 2. Be it further enacted, that when said part of Bibb street is or may be fenced or enclosed as aforesaid, the same shall forever cease to be a public highway or street, and may be used and occupied perpetually by the Birmingham Machine & Foundry Company, its successors and assigns."—Loc. Laws 1896-97, p. 949.

The complainant insists that the act is unconstitutional, in that it wrought the taking of private property for private (corporate, otherwise than municipal) use, without the consent of the owner.—Const. 1875, art. 1, § 24

(Const. 1901, art. 1, § 23). The construction of the act is simple. Its effect was, if valid, the surrender by the Legislature of the rights of the public in the defined section of Bibb street, on which, to either side of the vacated part, the respondent was the abutting owner. The provision in the act, declaring the respondent might use and occupy, forever, the described part of the street, was but the statement of the result the law works when an easement is removed from a servient estate in fee. So this merely declarative feature of the act is unimportant as a factor in the determination of the constitutionality of the act, since, under the conditions shown in this cause, it cannot be assumed, from this iteration of the effect of the law's operation where an easement is lifted, that the legislative purpose was to annual the public right in that part of the street in the interest of the respondent and against the interest and welfare of the public. The presumption always is that the law-making department has constitutionally acted, and that it has not is the burden undertaken by him who attacks the act. —*Sadler v. Langham,* 34 Ala. 311.

It has been long settled that, save as limited by constitutional restrictions, the state has plenary power over streets and highways within its borders. Such power is an attribute of sovereignty, and the fundamental law can, and alone does, set bounds to its exercise. In consequence of these considerations, the inquiry raised by the constitutional objection urged by complainant is whether a property owner, whose real estate does not abut on the street sought to be vacated, suffers a "taking" of a private right of property by the partial or entire vacation of a public street. The answer to this question must depend upon the character and extent of the right such an owner has in such a street. Hardly any subject of

judicial investigation has been more often before the courts of last resort in this country than that of roads and streets, and in perhaps no instance has there resulted a greater contrariety of opinion than in respect of the right to which our stated inquiry pertains. It is impossible to reconcile the divergent opinions entertained, or to pronounce satisfactorily upon the correctness, in our view, of many ably considered cases where constitutional and statutory provisions intervened to color, if not control, the conclusion reached.

It is axiomatic that, if the individual right prejudiced by the vacation of a part of the street affected is but of the common right enjoyed previous to vacation therein by the public, the exercise of the sovereign power before referred to by the state, or any authorized arm of it, it may be, to surrender the public right, no private right is impinged, and the constitutional restriction appealed to here is not violated. Additional to the right one has in common with the public, and which the state may surrender and destroy without invading any private property right, in a public street, there is only one class of proprietors whose private property rights a vacation of a public street may infringe to their damage. This class is created by the relation the property held bears to the public street. This relation, in the aspect under consideration, is in respect of the right of access one has to his property. In Elliott on Streets and Roads, at page 961, it is said that "the right which an abutter enjoys as one of the public and in common with other citizens is not property in such sense as to entitle him to compensation on the discontinuance of the road or street; but with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property this is radically different, for his right

is a special one. If this special right is of value—and it is of value if it increases the value of his abutting premises—then it is property, no matter whether it be of great or small value. *　*　* For this reason we think that the discontinuance or vacation of a street in such manner as to prevent access to the property of an adjoining owner is a 'taking' of property within the constitutional inhibition, and cannot be lawful without compensation to such owner." And this court, in *First National Bank v. Tyson*, 133 Ala. 475, 32 South. 149, 59 L. R. A. 399, 91 Am. St. Rep. 46, in recognition of the quoted statement of the right inhering in the abutting owner, said: "The easement of light and air is placed, on what would seem to be good reason, and certainly on authority, along with the easement of access—the one no more important than the other, except in degree. This easement of access, says Mr. Elliott, 'is so far regarded as private property that not even the Legislature can take it away and deprive the owner of it without compensation.' " And in the course of the opinion numerous authorities are quoted or cited to the effect that an abutting owner on a public street has a property right by way of easement of access, which, if destroyed, is a "taking" for which the deprived owner is entitled to compensation. A large number of adjudications, fully supporting this view, may also be found in the note to section 695 in Elliott on Streets and Roads.

But the question arises: To what extent, in the abutted street, does the private right of easement or access extend? In our opinion, and the conclusion is decisive of the constitutionality of the act as here assailed, the easement of access comprehends the unobstructed right of convenient and reasonable ingress and egress to the property abutting on the street. Necessarily the deter-

mination of what, in a given case, is a "taking" short of an infringement upon a "convenient and reasonable" way of ingress and egress to the property involved, must depend upon the circumstances and conditions developed by the investigation. No hard and fast rule can be declared, nor should an aesthetic taste or unreasonable desire for convenience of way be allowed to expand the right of easement of access to an extent beyond that necessarily essential to a fairly convenient way to the property of the complaining owner. This rule appeals to us as right and just to both the state and property owner. If the right should be limited to only those whose property abuts on the vacted section of a formerly public highway, that would result, palpably, in a denial of the very essence of the private right of property existing in the easement of access, because the vacation of the street on either side of that upon which the lot of the property owner abuts would just as effectually destroy his means of access as if that part of the street adjoining the lot was undertaken to be surrendered. But the limit, territorially speaking, of the easement of access, is found when the property owner is afforded a convenient and reasonable outlet to neighboring thoroughfares that he may unobstructedly use. The whole right is implied in the term "access;" and, to afford it, neither distance, within reasonable limits, nor ease of travel, left open, should be permitted to lead to wider requirement than we have undertaken to state, generally, as necessitated to avoid an infringement upon the private right of access to the owner of property abutting public streets.

These views are, we think, sustained, in principle or on reason by the following authorities, though not all are in point: *Gargan v. Louisville & Chicago R. Co.,* 89 Ky. 212, 12 South. 259, 6 L. R.. A. 340; *Dill v. Board of Edu-*

*cation,* 47 N. J. Eq. 421, 20 Atl. 739, 10 L. R. A. 276, and authorities in note on page 276; *First National Bank v. Tyson,* 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46, and authorities there cited; *Re Melon Street,* 182 Pa. 397, 38 Atl. 482, 38 L. R. A. 275; 1 Hale's American Const. Law., pp. 376, 377; Elliott on Roads and Streets, §§ 695, 877, 878, and authorities in notes. The maps made exhibits in the cause show that complainant's lots do not abut on Bibb street, but that, if so, they lie beyond two avenues, with reference to the vacated part of Bibb street, and that there are numerous convienient and reasonable ways of ingress and egress to complainant's lots. It follows that complainant neither had nor has any private right of access enjoyable over that part of Bibb street which the Legislature by its act vacated, and that in so doing it took, without the consent of complainant, no right of his apart from that he had as one of the public.

Several primary questions are presented by the solicitors in their briefs, but the views entertained obviate their consideration now. The decree of the city court was well rendered, and is therefore affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.