# Duy *v.* Alabama Western Railway Company.

## Damages for Obstructing Street.

(Decided December 21, 1911. Rehearing denied February 17, 1912. 57 South. 724.)

1. *Evidence; Judicial Notice; Public Acts.*—The court takes judicial notice of the public acts of the Legislature, although local in their application.

2. *Statute; Retroactive Operation.*—Unless the Legislature expreses a clear intention to give an act a retroactive operation, the courts will not construe the statutes so as to control or affect past matters or transactions.

3. *Nuisance; Public Nuisance; Obstruction of Street; Special Injury.*—One who suffers in person or property special peculiar injury, different in kind from that suffered by the general public on account of a public nuisance may recover damages therefor against the creator of the nuisance.

4. *Municipal Corporation; Streets; Vacation.*—Local Acts 1907, pp. 644-5, vacating certain streets and alleys in Birmingham on which the defendant railroad company had constructed its freight depot, do not evince a legislative intent to confirm or ratify the obstruction of the streets designated before the vacation thereof was accomplished by the Local Acts, and therefore, did not have the effect of taking away the right of property owners to recover damages for a nuisance arising out of such obstruction prior to the passage of said act.

5. *Same; Legislative Powers.*—The state's power is plenary in respect to the vacation of streets and highways within its borders, except as restricted by the Constitution, and hence, Local Acts 1907, p. 644, is constitutional.

6. *Same; Constitutional Limitation.*—Section 23, Constitution 1901, is the sole restraint on the state's power to vacate streets and highways within its borders; section 235, Constitution 1901, applies only to municipal and other corporations and individuals invested with the right to take property for public use.

7. *Same; Right of Abutting Owners.*—Where an adjoining property owner sought to recover damages for the obstruction of a highway by the defendant in constructing a freight depot across the same, and alleged that by reason of the obstruction his property was rendered less accessible, its prominence minimized, and the public use of the street on which it abutted deflected, lessening its value, he alleged a special injury different in kind from that suffered by the general public for which he was entitled to recover damages.

[Duy v. Alabama Western Railway Company.]

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by G. B. Duy against the Alabama Western Railroad Company for damages for obstructing street. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The complaint is as follows: Count 1: "Plaintiff claims of defendant the sum of $4,000 damages by reason of the following facts, to wit: Plaintiff avers that on and before, to wit, the 15th day of August, 1906, he was owner of the following described lots or parcels of ground in Birmingham, Alabama, described as follows, to wit: Lots twelve (12) and thirteen (13) in block ninety (90) according to the present plan and survey of said city. Said lots form a rectangle 100 feet square on the northeast corner of Fifteenth street and Second Avenue North, in said city. Plaintiff further avers that on and for more than twenty (20) years prior thereto, to wit, the 15th day of August, 1906, the said Fifteenth street was a public street, and had been used by the public as such; and said street extended northwardly from First avenue, and in front of plaintiff's said lot on one of its sides, and to the limits of the said city on the north, and that the said street between First and Third avenues was much traveled by the public in going to and from First avenue, and other parts of said city, and many people passed in front of plaintiff's said lot in going to and from First avenue and other parts of said city. Plaintiff further avers that the part of said Fifteenth street, between First and Second avenues was much used by the public in passing to and from First avenue and other parts of said city, and to that part of Fifteenth street in front of plaintiff's said lot, and to that part of Second avenue in front of plaintiff's said lot. Plaintiff further avers that the value of plaintiff's

lot is dependent on its accessibility to the public, and on the number of people and travel which pass in front of said lot. Plaintiff further avers that on or about the 15th day of August, 1906, defendant built across Fifteenth street, between First and Second avenues North, in the city of Birmingham, Alabama, a freight house, or depot, thereby permanently obstructing said street, and that the defendant since said date has used the said part of said street for its freight depot terminal, and by reason of said obstruction the said part of said street has been closed to public travel. Plaintiff further avers that the said part of said Fifteenth street so obstructed is about, to wit, 80 feet from plaintiff's said lot, above described, and diagonally across Second avenue from plaintiff's said lot. Plaintiff further avers that by reason of said obstruction in said street as aforesaid the public travel to and from First avenue and other parts of said city, as set out above, has been largely diverted from that part of Fifteenth street and Second avenue on which plaintiff's property as above described abuts, and by reason thereof plaintiff's property made less valuable, to the great damage of plaintiff as aforesaid. Plaintiff further avers that there are one or more lines of electric cars run on said First avenue, and that by reason of said obstruction in the said street said car lines are rendered less convenient and less accessible to the occupants of plaintiff's said property, thereby rendering plaintiff's said property less valuable, and greatly damaging plaintiff as aforesaid. Wherefore plaintiff sues."

The demurrers were as follows: "It appears from the complaint that the obstruction of the street complained of is a public nuisance, and the plaintiff does not show such special injury as entitles him to maintain an action for damages. It does not appear that plain-

tiff's lot abuts on that portion of Fifteenth street which it is alleged is obstructed by defendant's freight house and depot. The complaint shows no such special injuries or damage done plaintiff as entitle him to maintain this suit. For aught that appears, plaintiff is not deprived of reasonably free access to and from said lot. It affirmatively appears that said Fifteenth street and said alleys alleged to have been so obstructed have been duly, properly, and legally vacated as public streets and public thoroughfares. No facts are set forth which give this plaintiff the right under the act of the Legislature referred to to maintain this action on account of any special injuries done to him."

Count 2 is as follows: "Plaintiff claims of the defendant the further sum of $4,000, because heretofore, to wit, on July 5, 1877, the Elyton Land Company conveyed to the mayor and aldermen of the city of Birmingham, Alabama, certain streets, avenues, and alleys in said city for the use and benefit of the general public, and for no other purpose, and among other streets so dedicated Fifteenth street, between First avenue on the south and Fifth avenue on the north. That on and since the 15th day of August, 1906, the plaintiff has been the owner of lots 12 and 13, in block 90, according to the Elyton Land Company's survey, in said city, and has used the said property and improvements thereon for a storehouse. That the said defendant on to wit, the 15th day of June, 1907, erected and still maintains a brick freight house, a permanent structure, on said Fifteenth street, between First and Second avenues, in said city. That on July 31, 1907, the Legislature of the state of Alabama enacted an act entitled 'An act to vacate the dedication of the following alleys and part of the street in the Elyton Land Company's survey in the city of Birmingham—the alley bisecting block 94 and

the alley bisecting block 95 and that part of Fifteenth street lying between the north line of First avenue and the south line of Second avenue, and to provide compensation for any property owner injured thereby.' Such act appears on pages 644 and 645 of the Local Acts of said state of 1907. That said act provides that any property owner who may sustain any special injury by virtue of any structure erected in or across the portion of said street or alleys vacated hereby may bring one suit against the person or corporation maintaining such structure and recover all such damages, including future damages, which he may sustain in an action at law. That said plaintiff has suffered and will suffer in the future all the damages mentioned in the first count of this complaint, which first count is hereby adopted and made a part of this count, and has also been deprived by said structures on said streets and alleys of access to and ingress from said First avenue by way of said Fifteenth street. That the approach to his said property has been thereby rendered less accessible to customers and intending customers, and that the trade of the general public has been thereby deflected or diminished, and that all access to said Fifteenth street, between First and Second avenues, has been thereby entirely cut off. That a map of said blocks 90, 94, and 95, and surrounding territory, is hereto attached, marked 'Exhibit A,' and made part of this complaint. That the red cross marked on said map indicates the freight house of said defendants on said Fifteenth street, between First and Second avenues."

The same demurrers were filed to the second as to the first count.

The local act is as follows:

1. That there is hereby vacated, and the dedication annulled of, the following described alleys and part of

a street in the Elyton Land Company's survey of the
city of Birmingham, Alabama, viz: The alley bisecting
block 94 and the alley bisecting block 95, and that part
of Fifteenth street lying between the north line of First
avenue and the south line of Second avenue; that from
and after the passage of this act, said alleys and said
part of said street shall cease to be public thorough-
fares.

2. Nothing contained in this act shall be held or con-
strued as affecting or authorizing the taking, injury or
destruction of property without compensation or with-
out due process of law, but any property owner who
may sustain any special injury by virtue of any struct-
ure erected in or across the portion of said street or
alleys vacated hereby, may bring one suit against the
person or corporation maintaining such structure and
recover all such damages, including future damages,
which he may sustain in an appropriate action at law
brought in any court of competent jurisdiction.

3. That all laws in conflict herewith be and the same
are hereby repealed.

BROWN & MURPHY, and RICHARD H. FRIES, for appel-
lant. The court erred in sustaining demurrers to the
complaint.—*Willard v. Cambridge,* 3 Allen. 574; Elli-
ott on Roads & Streets, secs. 641 and 699; 21 A. & E.
Enc. of Law, 714; Cooley on Torts, 616. The lots abut-
ted.—*City v. Batsche,* 40 N. E. 21. Conceding they were
across the street, defendant is still liable.—*Meighan v.
Term. Co.,* 51 South. 775. The injury suffered by
plaintiff was special and different in kind from that suf-
fered by the public in general.—*Sloss-S. Co. v. Johnson,*
147 Ala. 384; *Sloss-S. Co. v. McLaughlin,* 55 South. __;
*Douglas v. City of Birmingham,* 118 Ala. 599; *Jones v.
Bright,* 140 Ala. 273. The nuisance was a public nui-
sance.—29 Cyc. 1152.

[Duy v. Alabama Western Railway Company.]

PERCY, BENNERS & BURR, and BLEWETT LEE, for appellee. Private nuisance—A private nuisance is one that affects a single individual or a *determinate* number of persons in the enjoyment of some private right not common to the public.—21 Enc. of Law, 682; *Hundley v. Harrison,* 123 Ala. 292. Public nuisance—A common or public nuisance is one that affects the people at large and is a violation of a public right by direct encroachment upon public property or by doing some act which tends to the common injury, or by omitting to do in the discharge of a legal duty, that which the common good requires.—21 Enc. of Law, 683; *Hundley v. Harrison,* 123 Ala. 292. Action by an individual for a public nuisance—A private individual may have an action for damages arising from a common or public nuisance; but he must show that he has sustained a particular injury beyond that suffered by the public at large, *since the contrary rule would cause such a multiplicity of suits as to be of itself an intolerable evil.* The particular injury required is, according to numerous authorities, an injury *different in kind* from that suffered by the general public and not merely one that is greater in degree.—21 Enc. of Law, 713-714. Where a plaintiff's lot does not abut on the portion of a city street which has been obstructed or vacated, and where plaintiff's means of ingress and egress to and from this lot are not interfered with by the obstruction or vacation, plaintiff does not sustain a special injury entitling him to recover of the person maintaining the obstruction.— *Ables v. Southern Railway Co.,* 51 South. 327; *Jackson v. Birmingham Machine & Foundry Co.,* 45 South. 660, 154 Ala. 464; *Hall v. A. B. & A. R. R. Co.,* 48 South. 365; *Buhl v. Fort Street Union Depot Co.,* 23 L. R. A. 392; 98 Mich. 599; 57 N. W. 829; *Dantzler v. Indianapolis Union Street Railway Co.,* 34 L. R. A. 769; 141 Ind.

604; *Smith v. Boston,* 7 Cushing (Mass.) 254; *Cram v. Laconia,* 57 L. R. A. 282 (New Hampshire); *Jno. K. Cummings Co. v. Deere,* 14 L. R. A. (N. S.), 822 (Mo.); *Stanwood v. Malden,* 16 L. R. A. 591 (Mass.); *Whitsett v. Union Depot Co.,* 10 Colo. 243; 15 Pac. 339; *East St. Louis v. O'Flynn,* 119 Ill. 200; 59 Am. Rep. 795; *Heller v. Atchison, etc., R. R.,* 28 Kan. 625. Whether a special injury is done a lot owner by the maintenance of an obstruction, is a question of law for the court.—*East St. Louis v. O'Flynn,* 119 Ill. 200; 59 Am. Rep. 795; *Stanwood v. Malden,* 16 L. R. A. 591 (Mass.); Wood on Nuisances, Section 839; *Dantzler v. Indianapolis Union Street Railway Co., supra; Chicago v. Union Bldg. Assn.,* 102 Ill. 379; 40 Am. Rep. 598. Constitutional provisions similar to our section 235 do not give a right of action for the obstruction of streets that does not exist in the absence of such constitutional provisions. That is, there is no injury within the meaning of such constitutional provisions, unless it be a special injury. —*Ables v. Southern Railway Co., supra; Aldrich v. Metropolitan R. R. Co.,* 57 L. R. A. 237; *McGee's Appeal,* 114 Pa. 477; *Buhl v. Fort Street Union Depot Co., supra; Glasgow v. St. Louis,* 107 Mo. 204; *Chicago v. Union Bldg. Assn.,* 102 Ill. 379; 40 Am. Rep. 598. The act of the Legislature vacating a portion of Fifteenth street did not give a right of action unless such right existed independently of the act.—*Buhl v. Fort Street Union Depot Co., supra; Cram v. Laconia,* 57 L. R. A. 282 (N. H.); *Stanwood v. Malden,* 16 L. R. A. 591 (Mass.); *East St. Louis v. O'Flynn,* 119 Ill. 200; 59 Am. Rep. 795. Neither the diversion of travel wont to pass plaintiff's lot, nor the rendering access to the car line less convenient constitute a special injury to plaintiff.—*Smith v. Boston, supra; Dantzler v. Indianapolis Union Street Railway Co., supra; Stanwood v. Malden,*

*supra; Cram v. Laconia, supra; Chicago v. Union Bldg. Assn., supra.*

McCLELLAN, J.—There are two counts in the amended complaint. They will be set out in the report of the appeal.

The questions to which attention is given here arise out of the action of the trial court in sustaining demurrers to these counts.

The first count seeks the recovery of damages to plaintiff's property, abutting on Fifteenth street, in the city of Birmingham, by reason of the permanent obstruction by defendant of that part of Fifteenth street between First and Second avenues and beyond, across Second avenue from the lots of plaintiff. The theory of this count is that a public nuisance, wrought by the obstruction of a public highway, inflicted special, particular damage to plaintiff's property. In this count the allegation is that the obstruction was made "on or about the 15th day of August, 1906." On July 31, 1907 (Local Acts 1907, pp. 644, 645), a local act was approved, whereby the mentioned section of Fifteenth street and two related alleys were vacated. This act, omitting the title, will be set out in the report of the appeal. Our construction of its second section will be later stated.

Independent of averment, the courts of this state take judicial notice of public acts of the Legislature, though local in application.—*Badgett v. State,* 157 Ala. 20, 48 South. 54; *McCarver v. Herzberg,* 120 Ala. 523, 25 South. 3; *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65.

In cases where the Legislature may enact with a retroactive effect, the courts will not construe the enactment to control or affect past transactions or matters, unless the Legislature expresses a clear intention to

[Duy v. Alabama Western Railway Company.]

give the enactment a retroactive operation.—*Gould v. Hayes,* 19 Ala. 438, 451; *Barnes v. Mobile,* 19 Ala. 707, 709; *Smith v. Kolb,* 58 Ala. 645; *New Eng. Mort. Co. v. Board of Revenue,* 81 Ala. 110, 1 South. 30; *Wetzler v. Kelly,* 83 Ala. 440, 3 South. 747; 4 May. Dig. p. 859.

There is nothing in the mentioned local act evincing any legislative intent to confirm or ·ratify from its inception the obstruction described before the vacation accomplished by the local act, as was the express purpose of the enactment considered in *State ex rel., etc., v. L. & N. R. R. Co.,* 158 Ala. 208, 48 South. 391.

So the first count must, if its sufficiency upon demurrer is vindicated here, be treated as claiming damages, suffered in consequence of the public nuisance charged, between the origination thereof and the approval of the vacating act.

The second count takes express account of the vacating act, and restates the provision of the second section thereof in respect of compensation "to any property owner who may sustain any special injury by virtue of any structure erected in or across the portion of said street or alleys vacated thereby." This (second) count then enters upon an enumeration of the damages suffered and to be (in future) suffered, and includes, by adoption, the damages alleged in the first count, and adds thereto that said structures deprive the property of access to and egress from First avenue by way of Fifteenth street, that approach to his property has been · thereby rendered less accessible to customers and intending customers, and that trade of the general public has been thereby deflected or diminished, and that all access to First avenue over Fifteenth street has been thereby entirely cut off. The damages alleged in the first count are diminution in value of the property because of deflected public travel by it, thereby to a large de-

gree minimizing its prominence, and the impaired convenience and accessibility of the property to street car lines along First avenue.

In the second count the erection of the permanent structure, in the described area between First and Second avenues, is alleged to have been made by defendant "on, to wit, the 15th day of June, 1907," a date, if taken particularly, antedating the approval of the vacating act on July 31, 1907. The second section of the vacating act, particularly mentioned in the second count, did not confer, or provide for, or attempt so to do, compensation or remedy for injury to property resulting from or attending the vacation of the section of Fifteenth street and the alleys described in the act. The second section of the local act contemplated only the preservation (a work of supererogation) of the right, and but echoed therefore the legal remedy already existent, a property owner, specially injured by the nuisable characteristics or consequences of the structures erected in or across the area vacated, had to enforce recompense therefor. The public right, subject to the legitimate power of the Legislature to lift, was consistent with the dedication mentioned in the act, but an easement upon a servient estate. When that was legally extinguished by legislative declaration, the legislative power attained the limit of its rightful force and effect; and any legislative effort to deal with or to affect the use or enjoyment of the area so relieved of the burden of the public easement was a vain assumption. —*Jackson v. Birmingham F. & M. Co.,* 154 Ala. 464, 470, 45 South. 660. The second count neither charges nor relies upon any right of action arising out of the unwholesome or deleterious character or consequences of the structures erected in the area vacated as a public way by the local act. It is its quality as an obstruction

or hindrance of which complaint is made.   Under this interpretation of the second section of the vacating act, its inclusion by averment in the second count avails nothing in the assertion of a right of action by this plaintiff against this defendant.

The constitutionality of the vacating act as regards the plaintiff's property is not to be doubted.   Except as restricted by the Constitution, the state's power is plenary in respect of the vacation of streets and highways within its borders.—*Jackson v. Birmingham F. & M. Co.,* 154 Ala. 464, 45 South. 660.

As to the state itself, the sole restraint in the particular now important is Const. § 23, wherein it is provided that "private property shall not be taken for, or applied to, public use, unless just compensation be first made therefor."   Section 235 is addressed to the restraint of "municipal and other corporations and individuals invested with the privilege of taking property for public use." This latter section does not apply to the state itself in the exercise of its sovereign power in restraint of which, in so far as we are now concerned, Const. § 23, alone operates.   It was ruled in *Jackson v. Birmingham F. & M. Co., supra,* that a property owner whose lot abutted on a street had a special, private property right in the street, which could not be taken, by a vacation of the street, without compensation, if such vacation, by the state, operated to deprive the property of a reasonably convenient means of access thereto.   In the *Jackson Appeal,* as appears, consideration was alone given the validity vel non of the legislative act as affected by Const. 1875, art 1, § 24; Const. 1901, § 23.   No account was or could be taken of section 25, or of its predecessor in the Constitution of 1875, for, as stated, that section of the Constitution did not restrict the state itself in the exercise of its power in the

premises. The doctrine of the *Jackson Appeal* was re-stated in *Hall v. A. B. & A. R. R. Co.,* 158 Ala. 271, 48 South. 365, though the ruling was inadvertently referred to section 235 of the Constitution. And this decision (*Jackson v. Birmingham F. & M. Co.*) was again referred to in *Meighan v. Birmingham Terminal Co.,* 165 Ala. 591, 599, 600, 51 South. 775, where, in treatment of charge 2, it was said that the "language was taken from the opinion" in *Jackson's Appeal,* and the use of the word "aesthetic" was said to be "open to verbal criticism." The word ("aesthetic") as employed in the mentioned charge, was subject to the criticism put upon it; but in the grammatical connection, materially different, in which it was used in the opinion mentioned (*Jackson's Appeal*), it was not open to that criticism, for it there qualified the noun "taste" which was the subject of the verb "allowed." As employed in the opinion in *Jackson's Appeal,* "aesthetic" did not refer to "convenience of way." The expression, in the opinion in *Jackson's Appeal,* was aptly incorporated in limitation of the generally stated private right of access, therein before considered, succinctly reiterated in *Hall v. A. B. & A. R. R. Co., supra.* It affirmatively appears from the map exhibited with the second count that the legislative vacation of the described section of Fifteenth street and of the related alleys did not infringe upon the private right of access stated in the opinion in *Jackson's Appeal, supra.* So, the second count must be treated as claiming compensation for a like wrong to that asserted in the first count, viz., for the obstruction of the public way between the creation of the obstruction, as alleged in the second count, and the date of approval of the vacating act.

One who suffers, in person or property, special peculiar injury in consequence of a public nuisance, has his

action in damages therefor against the creator thereof; but, if his injury be only that common to the public, he has no right of action, for he has suffered no injury of his private right.—Elliott on Roads & Streets, § 669, and citations, notes thereto; *Birmingham R. L. & P. Co. v. Moran,* 151 Ala. 187, 44 South. 152; *Dennis v. M. & M. Ry. Co.,* 137 Ala. 649, 658, 35 South. 30, 97 Am. St. Rep. 69; *Sloss-Sheffield S. & I. Co. v. Johnson,* 147 Ala. 384, 41 South. 907, 8 L. R. A. (N. S.) 226, 119 Am. St. Rep. 89, 11 Ann. Cas. 285; *Jones v. Bright,* 140 Ala. 268, 37 South. 79; full note to *Stetson v. Faxon,* 31 Am. Dec. 123, 132, 135; and notes to 5 Am. Dec. 18-21. Judge Freeman's conclusion in the pertinent particular in the note to *Stetson v. Faxon,* 19 Pick. (Mass.) 147, 31 Am. Dec. 123, is approvingly referred to in *S.-S. S. & I. Co. v. Johnson, supra.* Whether the individual property owner seeks equity's power to abate a public nuisance created by the obstruction of a highway, or impleads the obstructor of the highway in a court of law to respond in damages suffered in consequence of the obstruction, the fundamental principle inheres in the right he would in each instance assert and vindicate, namely, that the obstruction has inflicted special, peculiar damage upon him, different from that inflicted upon the public. If the wrong to him is only that common to the public, he is without individual right to assert or vindicate; and his cause, in either tribunal, must fail, for the public wrong suffered cannot be redressed or its cause removed by an individual who has not been specially, peculiarly damaged thereby.—Author., supra. Reference to many of the decisions of eminent courts dealing with the question in concrete cases, whether the property owner has suffered special, peculiar damage in consequence of the obstruction of a highway, whereby ingress and egress to the property has not been entirely

cut off, but the traversing of a circuitous route is thereby compelled, discovers a marked inharmony even where the status was, in substance, the same. In *Williams' Case,* 3 Coke's Rep. 73, it was pertinently said: "A man shall not have an action on the case for a nuisance done in the highway, for it is a common nuisance, and then it is not reasonable that a particular person should have the action; for by the same reason that one person might have an action for it, by the same reason every one might have an action, and then he would be punished 100 times for one and the same cause. But, if any particular person afterwards by the nuisance done has more particular damage than any other then, for that particular injury, he shall have a particular action on the case. * * *"

This statement is quoted and strongly approved for its directness, simplicity, and readiness of application in the note to *Stetson v. Faxon, supra;* and this court has approved the conclusion there drawn by the learned editor in *Jones v. Bright* and *S.-S. S. & I. Co. v. Johnson, supra,* and in the latter decision it was ruled that an enforced circuity of route from the property owner's location to the outside world wrought a special, peculiar injury to him. To like effect was the ruling in *Jones v. Bright, supra.* No distinction in principle can in our opinion be taken in respect of the specialty of the injury to the property owner between cases where circuity of route to the outside world and consequent diminution of value of his property is the result of the obstruction of the highway, and cases where, as is here alleged, the obstruction minimizes the prominence of a property by deflecting the popular use of the way on which it abuts, and thereby, it may reasonably be alleged, lessening its value. Such a state of injury must be special, peculiar to the owner of the property. It is

[Duy v. Alabama Western Railway Company.]

a particular injury within the quoted doctrine of the *Williams Case, supra;* and accords with the therewith consistent ruling in our cases of *Jones v. Bright* and *S.-S. S. & I. Co. v. Johnson, supra,* and the authorities therein cited, and with the express ruling made in *Sloss-Sheffield Steel & Iron Co. v. McLaughlin,* 173 Ala. 76, 55 South. 522, delivered since the foregoing opinion was prepared. The rulings made on the several appeals in *Southern Railway Co. v. Ables,* 153 Ala. 523, 45 South. 234, and *Ables v. Southern Ry. Co.,* 164 Ala. 356, 51 South. 327, Id., 55 South. 816, are not, the court holds, opposed to the conclusion now expressed. That other properties are thereby likewise injuriously affected does not render the injury any the less special or particular. —29 Cyc. p. 1213.

In the light of these considerations, the counts of the amended complaint were not subject to the demurrer interposed thereto, since each sufficiently set forth a cause of action for damages in consequence of the obstruction of the street before the vacating act was approved July 31, 1907.—*Meighan v. Birmingham Terminal Co.,* 165 Ala. 591, 51 South. 775; *Sloss-Sheffield S. & Iron Co. v. McLaughlin,* 173 Ala. 76, 55 South. 522.

The judgment is therefore reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, ANDERSON, SAYRE, and SOMERVILLE, JJ., concur. DOWDELL, C. J., not sitting. MAYFIELD, J., dissents.

### ON REHEARING.

PER CURIAM.—Upon full consideration of the argument submitted in support of the application for rehearing, the court feels constrained to overrule it, and the rehearing must, therefore, be denied.

No ruling of the trial court touching the measure of damages is presented on this appeal for review. The court cannot hence consider at this time the matter of measure of damages. It is proper, however, that it be stated, though necessarily a reiteration, that permanent injury or damage to the plaintiff's property is not recoverable, since the street and alleys were vacated by the vacating act, thus and then relieving the freight house of its character as an obstruction in a public street.

MAYFIELD, J.—(dissenting.)—I cannot concur in the conclusion or decision in this case. There are many propositions of law well stated in the opinion, but of these none in my judgment will warrant the conclusion reached, that both counts of the complaint state a cause of action, and are not subject to the demurrer.

Counsel for appellant and for appellee state and concede in their briefs that the trial court sustained the demurrer to the complaint under the authority of the *Albes Case,* which has been twice considered by this court. In my judgment the counts were properly held bad by the trial court under the decisions in that case, as well as under the great weight of authorities, both English and American. There are some cases which support the conclusion reached in this case, but in my opinion those cited do not support it, as I shall attempt to point out.

It will be observed that the only damages or relief sought in this case was for depreciation in value of two lots, each 50x100 feet, on account of an obstruction in a street some distance from these lots. The rule, as I understand it, and as I think the majority opinion concedes it to be, is this: "In order that an individual may maintain an action for a public nuisance, he must show

that he thereby suffers a particular, direct, and sub-
stantial injury, different in kind from that suffered by
the public. It must be beyond the general injury suf-
fered by the public, and his damage must be direct and
substantial, and not merely consequential.—*Benjamin
v. Storr,* L. R. 9 C. P. 401, 409; 43 L. J. C. P. 169; 19
Eng. Rul. Cas. 263." The only damages sought to be
recovered in this case are purely and solely consequen-
tial. They are not claimed to be direct or different in
kind from those suffered by the public. The obstruc-
tion does not touch plaintiff's property. The ingress
and egress to and from his property are not obstructed
or impeded. It is the ingress and egress as to other
property or other parts of the city that are obstructed;
yet consequent damage to the property in question is
claimed. The complaint shows that there are two
streets, open and unobstructed, in front of this prop-
erty; and that the obstruction while in one of these
streets is in a block different from that in which plain-
tiff's property is situated. There is no attempt in this
case to recover as for damages to a trade or to an occu-
pation, but merely as for damages sustained in the di-
minished value of the lots. The first count does not
allege that the lots are occupied. It is true that the
counts allege that, by reason of the obstruction, the
travel of the public is diverted from the streets in front
of plaintiff's lots, and that, in consequence thereof, the
value of these lots has been greatly decreased; yet for
this very reason the damages sought to be recovered
are consequential—not direct—and are therefore not
recoverable.

As shown by all the authorities, the rules are differ-
ent in actions brought to recover compensation for
lands taken or injured by reason of the nuisance from
those in actions brought to recover damages purely per-

sonal, such as damages to trade, personal injuries, cost and expense of removing, avoiding, etc. The rule is well and fully stated in the leading English case, above referred to, as follows: "The cases referred to upon this subject show that there are three things which the plaintiff must substantiate, beyond the existence of the mere public nuisance, before he can be entitled to recover. In the first place, he must show a particular injury to himself beyond that which is suffered by the rest of the public. It is not enough for him to show that he suffers the same inconvenience in the use of the highway as other people do, if the alleged nuisance be the obstruction of a highway. The case of *Hubert v. Groves*, 1 Esp. 148, seems to me to prove that proposition. There the plaintiff's business was injured by the obstruction of a highway, but no greater injury resulted to him therefrom than to any one else, and therefore it was held that the action would not lie. *Winterbottom v. Lord Derby*, L. R. 2 Ex. 316, was decided upon the same ground. The plaintiff failed because he was unable to show that he had sustained any injury other and different from that which was common to all the rest of the public. Other cases show that the injury to the individual must be direct, and not a mere consequential injury, as where one way is obstructed, but another (though possibly a less convenient one) is left open. In such a case the private and particular injury has been held not to be sufficiently direct to give a cause of action. Further, the injury must be shown to be of a substantial character, not fleeting or evanescent. If these propositions be correct, in order to entitle a person to maintain an action for damage caused by that which is a public nuisance, the damage must be particular, direct, and substantial."—19 Eng. Rul. Cas. 270. I submit that, under these authorities, the complainant

in this case shows no right of recovery. Where damages
to realty are sought, the injury must be direct and attin-
gent to the land itself, not remote or consequential, as
is shown in this case. If it be injury personal, to busi-
ness or to trade, then the nuisance may be more or less
remote. If the nuisance complained of in such case be
an obstruction of a highway, then, as to personal dam-
ages,the obstruction need not abut plaintiff's property,
provided the injury can be shown to be the direct and
not the consequential result of the nuisance, and differ-
ent in kind from that suffered by the public similarly
situated. There is, and can be, no difference between a
suit like this, where the private damages sought to be
recovered as for a public nuisance are to the land only,
and actions for damages to land taken or "injured," for
public purposes, by virtue and authority of law, consti-
tutional or statutory. It has been repeatedly decided
by the English and American courts that such statutes
or constitutional provisions are intended to give the
right of action as to the land which the owner would
have had, but for the act of Parliament or of the Legis-
lature authorizing the taking or injuring of property.
So, if the injury is private, and it is to land only, then,
of course, the same rules of law must apply, whether
the injury to, or the taking of, the land, was lawful or
unlawful, except as to punitive damages, which might
be allowed in the one case and not in the other. In
other words, if a street or a road is so obstructed as to
prevent its use as a highway, and the value of the land
in the vicinity is thereby depreciated, it is immaterial,
under our Constitution and statutes, so far as private
actions can be maintained solely for depreciation in
value of such land on account of the obstruction, wheth-
er the obstruction is authorized or not. If the act ob-
structing or vacating was authorized by law, then the

Constitution and statutes allow the same recovery as for injury to the land as the owner would have had, if the obstructing or vacating had not been authorized; but, as to personal injuries not connected with the land, the constitutional provision and statutes do not apply. It is only damages to the specific property which is taken or injured that are saved to the owner; but those so saved are the same as he would have had but for the authorized taking or injury.

Having quoted from the leading and ruling English case upon this subject, it may be well to give the leading and ruling American cases. The leading American case upon the subject is conceded by the text-writers and annotators to be that of *Smith v. Boston,* 7 Cush. (Mass.) 254, the opinion therein being written by that great jurist, Chief Justice Shaw. From this opinion I quote: "The court are of opinion that the direction given by the judge at the trial was correct, and that the inconvenience sustained by the petitioner, if any, was not such an injury done him in his property, as to entitle him to damages within the true intent of the law. There is obviously a difficulty in laying down a general rule applicable to all cases. One limit, however, must be observed, which is that the damage for which a recompense is sought must be the direct and immediate consequence of the act complained of, and that remote and contingent damages are not recoverable. The inconvenience of the petitioner is experienced by him in common with all the rest of the members of the community. He may feel it more in consequence of the proximity of his lots and buildings; still it is a damage of like kind, and not in its nature peculiar or specific. The creation of a public nuisance by placing an obstruction in a highway can only be punished and suppressed by a public prosecution; and though a man who lives

[Duy v. Alabama Western Railway Company.]

near it, and has occasion to pass it daily, suffers a damage altogether greater than one who lives at a distance, he can have no private action, because in its nature it is common and public.  But if he suffers a peculiar and special damage, not common to the public—as by driving upon such an obstruction in the night, and injuring his horse—he may have his private action against the party who placed it there."  Further on, in the same opinion, the great chief justice says:  "We do not mean to be understood as laying down a universal rule that in no case can a man have damages for the discontinuance of a highway unless his land bounds upon it, although as applicable to city streets, intersecting each other at short distances, it is an equitable rule.  A man may have a farm, store, mill, or wharf, not bounding on a street, but communicating with it by a private way, so situated that he has no access to his property but by the public way.  If this is discontinued, he must lose the benefit of his estate, or open a way at his own expense, which might be a direct and tangible damage, consequent upon the discontinuance of the public way, and we are not prepared to say that he would not have a claim for damages under the statute."  The two and only Alabama cases which can be said to support the decision in the case at bar are those of *Jones v. Bright,* 140 Ala. 268, 37 South. 79, and *Johnson's Case,* 147 Ala. 384, 41 South. 907, 8 L. R. A. (N. S.) 226, 119 Am. St. Rep. 89, 11 Ann. Cas. 285, and each of those clearly fell within the exceptions mentioned by Chief Justice Shaw. The nuisance complained of in each of those cases was clearly a private as well as a public one, and the opinion in each is expressly put upon the ground that the nuisance was a private, as well as a public one.

I do not think that any one ever did or could contend upon the facts in the case at bar that the nuisance complained of is one peculiar to the plaintiff or to any other person. The case at bar indisputably falls within the general class, in which the English judges and Chief Justice Shaw say there can be no private action as to the public nuisance. To be sure of this, let us see what the later judges of these same great courts say of the English and American leading cases above quoted from. Justice Bigelow, in the case of *Brainard v. Connecticut River Co.,* 7 Cush. (Mass.) 510, 511, said: "It is only when he suffers some special damage, differing in kind from that which is common to others, that a personal remedy accrues to him; and certainly no rule of law rests on a wiser or more sound policy. Were it otherwise, suits might be multiplied to an indefinite extent, so as to create a public evil, in many cases much greater than that which was sought to be redressed.— *Stetson v. Faxon,* 19 Pick. 147 [31 Am. Dec. 123] ; *Proprietors of Quincy Canal v. Newcomb,* 7 Metc. 276 [39 Am. Dec. 778] ; *Smith v. Boston,* ante [7 Cush.] 255. The same rule is recognized and applied in cases where equitable relief is sought, as well as law. A recent case in England—*Soltau v. De Heild,* 2 Simons, N. S. 133— contains a full discussion of this subject, and the principle is clearly stated, and the authorities sustaining it are fully reviewed in the elaborate judgment of the vice chancellor." In *Stanwood v. Malden,* 157 Mass. 17, 31 N. E. 702, 16 L. R. A. 591, the headnote, which clearly states the question decided, is as follows: "The discontinuance of a part of a street in a city is not a ground of action by an owner of land on another street, into which, opposite his land, the part of the street discontinued runs obliquely, if the means of access to his estate remain ample, although its money value is

diminished by the diversion of travel; and it is immaterial that a small point of land, of which he owns the fee simple subject to the public right of way, touches the discontinued parts of the street." The case of *Harvard College v. Stearns,* 15 Gray (Mass.) 1, was an action for damages for obstructing a highway, in which, as in the case at bar, the damages claimed were solely for the depreciated value of the premises due to closing of access. The lower court instructed the jury that such damages were not recoverable, and the Supreme Court of Massachusetts, after reviewing the authorities on the subject, concluded as follows: "If we now turn to the case before us, it will be found that the claim of the plaintiffs is solely for the injury to their land in consequence of the alleged obstruction. The brief of the plaintiffs' counsel puts the case thus: 'The injury which the plaintiffs sue for is the reduction in value of their land, because not only the servants of the plaintiffs, but others, cannot approach it by water.' No evidence appears to have been offered, or any claim set up, or instructions asked of the court, upon the ground of any particular actual hindrance or delay to the plaintiffs, or obstruction in reference to any case of actual intended use of their land by passing through the creek. The claim was for injury to their land by reason of an obstruction placed in a navigable stream or public way, whereby their land would be rendered more difficult of access and less valuable. Upon the case as presented, the court are of opinion that no exception lies to the instruction given."

In the case of *Aldrich v. Metropolitan W. S. Elev. R. Co.,* 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237, a case very much like this, the court said: "There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly im-

pair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of damnum absque injuria. So as to an obstruction in a public street, if it does not practically affect the use or enjoyment of neighboring property, and impair its value, no action will lie. In all cases, to warrant a recovery, it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that, by reason of such disturbance, he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provision on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present Constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law. Here there has been no direct physical disturbance of any right, public or private, which the plaintiff enjoys in connection with her property, and which gives to it an additional value, whereby she has sustained a special damage in excess of that sustained by the public generally. The damages sued for are of the same kind and character as those sustained by the public generally in the ownership of property, which property may have been lessened in value by the construction and operation of the road."

In my opinion the case at bar cannot be distinguished from the *Case of Albes,* twice considered by this court. While one was a suit in equity and the other an

action at law, the facts and the rights of the parties are substantially the same. If Albes and Jackson were not entitled to damages in the cases cited in the majority opinion, I fail to see how this plaintiff has shown any greater or different right. If this plaintiff can recover in this action under the facts stated, then it is certain that there is no end to the suits that may be brought for this alleged public nuisance. The courts will be absolutely flooded with actions as for this one wrongful act. From the plaintiff's complaint it appears that, if his two lots were damaged as he alleges, then all other lots in that vicinity—hundreds if not thousands—were damaged like this, more or less, of course, according to their proximity to the obstruction. If a public highway, such as a river or a public road, should be obstructed at one point, is it possible that all landowners upon such highway whose property may be thereby depreciated in value may maintain actions, either at common law, or under the statutes and constitutional provisions? I think not; but in my opinion the effect of this decision is to hold that they can. I concede that, if they abut the obstructed part, they can; that, if they or their property is thereby put in a cul-de-sac, they can; or that, if their ingress and egress to and from their property is thereby cut off, they can maintain such action, or that if they suffer any direct damages, different in kind from that suffered by the public, they have their action as to such damages; but they have no right of action as for consequential damages to their property —such only as are shown in the case at bar—which are not at all different in kind, though they may be, in a degree, from those suffered by the public.

*Meighan's Case,* 165 Ala. 591, 51 South. 775, is clearly distinguishable from that at bar, and falls within the class of *Albes' Case;* and from the report of it (page

593 of 165 Ala., page 776 of 51 South.) it appears that the obstruction complained of was "immediately next to where plaintiff's lot abuts thereon," thus making it an entirely different case from that here under consideration. This point of difference is the very reason, as said in *Albes' Case,* that makes the damages recoverable —that is, that they are direct, attingent, and different in kind from those suffered by the public and by owners whose property does not abut upon the part of the street vacated or obstructed.—*McLaughlin's Case,* 173 Ala. 76, 55 South. 522, is the counterpart of *Johnson's Case,* above referred to, and is expressly placed upon the latter as an authority. There the obstruction was upon two sides of the property, thus putting it in a cul-de-sac and shutting off plaintiff's way to the city of Birmingham, her property being on the outskirts of the city, which fact clearly made the plaintiff's damages different in kind from those suffered by the public. Moreover, *McLaughlin's* and *Johnson's Cases,* and that of *Jones v. Bright,* were suits in equity to abate a nuisance which was obviously both a public and a private one as to the complainants, in that they had the individual and personal right to have the obstruction removed, so as to give them a right of way to market and to communicate with the outside world. While not a "way of absolute necessity," it was one special and personal to the complainants in those cases; and hence the bills in those cases had equity independent of the question of damages to the land. In fact, in those cases it was the question of right of way to be protected, rather than that of damages to be recovered.

The statutes and constitutional provisions applicable to this case are not in abrogation of the plaintiff's common-law rights, but they are in this particular case (the statute specially) declaratory of his common-law

rights; and how it results that he can recover under his common-law rights, but not under constitutional rights, I am not able to understand. It may be that I fail to comprehend the true holding of the majority opinion; but, as I understand it, it holds that plaintiff may recover under his common-law right but not under the statute, and I think the statute declaratory of his common-law rights.