PARKER, Justice
(concurring specially).
I concur in the decision overruling the applications for rehearing; I write specially to note the tension between this Court’s strong support for an individual’s fundamental right to property and this Court’s exercise of judicial restraint in interpreting the Alabama Constitution of 1901. I also write to note that M & N Materials, Inc. (“M <& N”), is not without a remedy. M & N appropriately challenged the constitutionality of the exercise of the police power by the Town of Gurley (“the Town”) in passing the at-issue zoning ordinance; M & N’s constitutional challenge was dismissed without prejudice, and M & N intends to refile it. Lastly, I write to respond to Justice Murdock’s substituted dissent.
First, an individual has a fundamental right to property. William Blackstone defined an individual’s property rights at common law as including “the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land.” 1 William Blackstone, Commentaries *134. Consistent with Blackstone’s view of an individual’s private-property rights as fundamental, in Smith v. Smith, 254 Ala. 404, 409, 48 So.2d 546, 549 (1950), this Court stated that “it should never be forgotten that the right to control one’s property is a sacred right which should not be taken away without urgent reason.” Indeed, property rights have historically been provided strong protection in this Country and have -been the cornerstone in the development of this nation. See Page Car-roccia Dringman, Regulatory Takings: The Search for a Definitive Standard, 55 Mont. L.Rev. 245, 248 n. 16 (1994) (“ ‘Next to the right of liberty, the right of property is the most important individual right guaranteed by the [federal] Constitution and the one which, united with that of personal liberty, has contributed more to the growth of civilization than any other institution established by the human race.’ [Senator Steve Symms, The Private Property Rights Act (1991),] at 11 (citing William H. Taft, 27th President of the United States (1906)).... ‘The moment the idea is admitted into society that property is not as sacred as the laws of God, and there is not force of law and public justice to protect it, anarchy and tyranny commence.’ Id. at 11 (citing John Adams, 2d President of the United States (1821)).”).
In 1901, the year the current Alabama Constitution was ratified, the threat of regulatory “takings” of property through a municipality’s authority to pass zoning regulations was not an obvious threat to an individual’s property rights.[3] In 1926, the *36 Supreme Court of the United States recognized the inconspicuous threat zoning laws posed to property rights in Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303 (1926), its landmark decision concerning zoning laws: “Building zone laws are of modern origin. They began in this country about 25 years ago.” In fact, it was not until 1909 that Los Angeles, California, became the first major American city to enact a zoning ordinance. Michael Lewyn, New Urbanist Zoning for Dummies, 58 Ala. L.Rev. 257, 262 (2006). New York City followed suit in 1916, and municipalities’ use of zoning laws then spread rapidly throughout America. Id. By 1920, 904 cities had zoning ordinances, and, later in the 1920s, recognizing the growing use of local zoning ordinances, the Federal Department of Commerce drafted a model Standard State Zoning Enabling Act. Id. I include this brief history of zoning ordinances in America to demonstrate that zoning ordinances passed by local municipalities were nonexistent and unforeseeable in Alabama when the current Alabama Constitution was ratified in 1901.
The applicable provision of our Constitution is Article XII, § 235, Ala. Const. 1901, which states:
“Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. The legislature is hereby prohibited from denying the right of appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise, but such appeal shall not deprive those who have obtained the judgment of condemnation from a right of entry, provided the amount of damages assessed shall have been paid into court in money, and a bond shall have been given in not less than double the amount of the damages assessed, with good and sufficient sureties, to pay such damages as the property owner may sustain; and the amount of damages in all cases of appeals shall on demand of either party, be determined by a jury according to law.”
Section 235 plainly states that compensation is due a property owner when his land has been “taken, injured, or destroyed by the construction or enlargement of [a municipality’s] works, highways, or improvements. ...” (Emphasis added.) In other words, under § 235, compensation is due *37 when property is taken by a municipality for public works. When compensation is mandated in a for-public-works situation, it precludes regulatory “takings” through zoning.
*36 "Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. The general assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers, or otherwise; and the amount of such damages in all cases of appeal shall, on the demand of either party, be determined by a jury according to law."
Article XII, § 235, Ala. Const.1901, set forth infra, was not an entirely novel constitutional provision, but was derived from Art. XIV, § 7, Ala. Const. 1875. See Opinion of the Justices No. 133, 259 Ala. 524, 526-27, 67 So.2d 417, 419-20 (1953) (noting that Art. XII, § 235, Ala. Const.1901, used language identical to that used in Art. XIV, § 7, Ala. Const. 1875, and added additional language). Therefore, § 235 was essentially drafted prior to or in 1875.
*37 In my dissent to Chism v. Jefferson County, 954 So.2d 1058 (Ala.2006), I stated the following concerning constitutional interpretation:
“Constitutions, in order to effectively protect the rights of the people, must be accessible to them, or at least to the average educated citizen. Consistent with this purpose, ‘[a] constitution, properly conceived, deals with basic principles and policies, and omits specific applications,’ Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 498, 86 So. 56, 58 (1920).
“Thus, proper interpretation of a constitutional text must begin with the ordinary usage of the words of the text, which we call its ‘plain meaning.’ As this Court has explained with respect to statutory interpretation:
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’
“Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). Furthermore, Courts are ‘not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution.’ McGee v. Borom, 341 So.2d 141, 143 (Ala.1976).”
954 So.2d at 1099 (Parker, J., dissenting). Further, in Ex parte James, 836 So.2d 813, 834-35 (Ala.2002), this Court set forth the following caution concerning its duty to interpret the Constitution:
“And like the United States Supreme Court’s duty with regard to the federal constitution, our status as final arbiter imputes to us a particularly important duty with regard to the Alabama Constitution, because while our interpretations of statutes can be, in a sense, ‘overruled’ by subsequent legislative enactment, our interpretations of the Alabama Constitution are beyond legislative alteration. See Marsh v. Green, 782 So.2d 223, 232 (Ala.2000) (noting that, in cases involving constitutional adjudication, the doctrine of stare decisis plays little role ‘because, in such eases, “ ‘ “correction through legislative action is practically impossible.” ’ ” ’ (quoting Seminole Tribe of Florida v. Florida, 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996))); see also Agostini v. Felton, 521 U.S. 203, 235, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (noting that the policy which un-dergirds the principle of stare decisis— that sometimes ‘it is more important that the applicable rule of law be settled than that it be settled right’ — ‘is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions’ (quoting Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting))); City of Boerne v. Flores, 521 U.S. 507, 535-36,117 S.Ct. 2157,138 L.Ed.2d 624 (1997) (discussing Congress’s inability to change the Court’s interpretation of the United States Constitution); Napue v. Illinois, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (noting that the Supreme Court has a ‘solemn responsibility for main *38 taining the Constitution inviolate’) (citing Martin v. Hunter’s Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816); and Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)).”
In his article Interpreting the Alabama Constitution, 71 Ala. Law. 286 (July 2010), Marc James Ayers, discussing Ex parte Melof, 735 So.2d 1172 (Ala.1999), set forth a cautionary tale concerning this Court’s role as final arbiter of the Alabama Constitution:
“In [Ex parte] Melof, [735 So.2d 1172 (Ala.1999),] the [C]ourt corrected an erroneous line of decisions that had actually created and relied upon a constitutional provision — an ‘equal protection provision’ — where none existed in the Alabama Constitution of 1901. It was undisputed that such a provision existed in earlier Alabama constitutions but that it had been intentionally removed in the 1901 Constitutional Convention in an overall effort to hinder black Alabamians. However, in 1977 the court ruled (based on a scrivener’s error, as it turns out) that various other constitutional provisions somehow combined to form the essence of an ‘equal protection provision’ similar to, but not necessarily identical to, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This ‘provision’ had no specific text (and therefore no history to be examined), but was merely the ‘spirit’ behind several different provisions.
“Like the federal Constitution’s Equal Protection Clause, an equal protection provision in the Alabama Constitution would carry with it certain substantive limitations on the state, and could be interpreted as providing much greater limitations than those provided under the Equal Protection Clause. And as this ‘provision’ was allegedly part of the Alabama Constitution, any ruling by the Alabama Supreme Court under that provision would not be reviewable by the United States Supreme Court. The ‘phantom equal protection provision’ was used in striking down as unconstitutional tort reform legislation and in attempting to judicially restructure the funding of Alabama’s educational system.
“The phantom equal protection provision finally met its end in Melof. In that decision, the [C]ourt stressed that it could not simply create constitutional provisions under the guise of ‘interpretation,’ and that, even though several decisions had relied on the phantom provision, the principle of stare decisis could not ... apply to uphold a wholly unfounded constitutional interpretation. Although several of the justices made it clear that they personally desired that the Alabama Constitution contain an equal protection provision — Justice Houston even included in his special writing a letter to members of all three branches of Alabama’s government expressing this desire — they also made it clear that a strong desire to see the constitution written differently does not provide grounds for the judiciary to simply declare it to be so.
“Three justices dissented, led by Justice Cook. Although admitting that the Alabama Constitution of 1901 did not have an express ‘equal protection provision,’ the dissenting justices argued that the essence of such a provision is found in and among other constitutional provisions. Justice Cook accurately described how the actions of the Constitutional Convention of 1901 were explicitly undergirded with racist motivations, including the Convention’s elimination of the equal protection provision. Justice Cook’s eloquent opinion provided much support for the general concept of equal protection under the law and for the *39 inclusion of an equal protection clause in Alabama’s Constitution. He also argued that some other states do not have an explicit ‘equal protection provision’ but have nonetheless construed their state constitutions to include one.
“Although he wrote the majority opinion, Justice Houston also filed a special concurrence in which he responded to Justice Cook’s impassioned defense of an implicit equal protection provision. Justice Houston felt the force of Justice Cook’s arguments (especially Justice Cook’s accurate description of the racist motivations behind the framing of the Alabama Constitution of 1901), but explained how the framers’ abuse of power only served as more reason to show judicial restraint, even when it hurts in the short term:
[[Image here]]
“ ‘Among Supreme Court Justices, the notion of truth should be paramount. As demonstrated by Justice Cook’s well-documented account of the racially biased forces that were present at the Constitutional Convention of 1901, we have all seen how much damage can be done. by the State when truth is overlooked in favor of expedience and power. If I have done anything by consistently pointing out what is unfortunately but unmistakably true — that Alabama’s Constitution currently has no equal-protection clause — I have attempted to keep the Court from corrupting not only the Constitution, but itself as well. We pour corruption on both sacred entities by failing to resist the urge to drink from the chalice of illegitimate, but available, power. With that understood, I want to underscore one unavoidable truth: that the power to amend the Constitution rests with the people of the State of Alabama, not with the members of this Court.
“ ‘We must recognize that we cannot change our history, no matter how egregious or embarrassing our history might be. It is precisely because individuals who govern can do some egregious things with the power that has been given them that we have the concept of the constitution — a legal document meant to achieve two primary goals. First, a constitution establishes a particular form of government. Second, a constitution, as the solidifying agent of the rights recognized by the government, protects the individual against the whim of those in power.
“ ‘As a legal document, a constitution does not change on its own. The very purpose of protecting individuals would be undermined if those in charge of interpreting the constitution were to add or delete provisions to reflect ‘changes in society.’ Why? Because both the question of who selects the interpreter and the question of what counts as a ‘change in society’ will be decided by those in power at any particular time. No, as a legal document, a constitution can change only if the parties who gave effect to the document — the people — call for change. This recognition of the exclusive right of the people to change their own constitution is inherent in the amendment procedure.
[[Image here]]
“ ‘Such is the danger of sitting on the highest court of any sovereign when that court is interpreting the sovereign’s own constitution. With no threat of being overruled, we can wield our words in any way that we like, knowing that they will be given the full effect of law. In this way, the nature of being Supreme Court Jus *40 tices creates a dangerous dynamic. As we are sworn in, we are handed— by the people — a powerful sword: our ability to state what the law is. At the same time, we are placed inside a paper boundary — a written constitution — and told by the people ‘this far you may go, and no further.’ The problem is that the sword can easily sever the boundary and we can escape its limits, perhaps with the notion of ‘doing justice.’ Once the boundary is severed, however, it is not easily repaired; and the next judge, now not bound, is free to do either justice or evil. As judges, then, we are entrusted by the people to use that sword wisely and with restraint; to stay within the boundary no matter how strongly we think it too small to meet the people’s needs. The people made the boundary; it is for the people to enlarge it.
“ ‘It is true, as Justice Cook points out, that racist motives were behind the action of the 1901 Constitutional Convention eliminating the equal-protection clause from our Constitution. The fact that we still do not have an equal-protection clause in our Constitution is certainly troubling. It is just this kind of situation that sparks in all of us such an emotional indignation that we want to correct this wrong as fast as possible, in any way possible.... To be sure, a judicial declaration [creating an ‘equal protection provision’] would be much faster and easier than a constitutional amendment. Also, I am sure that the general population would overwhelmingly support such a declaration. There would be very little resistance or grumbling among the citizens of Alabama, so why not?
“ ‘The problem, of course, as I have illustrated above, is that while such a popular declaration may be all right today, we must ask: What about tomorrow’s judge and tomorrow’s issue? If we are not restrained to the text of the Constitution; if we current Justices can amend it today by judicial declaration to include a provision that the people have not put there, will the next ‘declaration’ be so favorable? As Justice Cook has made clear in his dissent, those with power can do some horrible things for some horrible reasons. It is naive to think that something like that could not happen again. As the saying goes, those who do not pay attention to history are doomed to repeat it.
“ ‘Might does not make right. We should not, simply because we can, shift the power to amend the Constitution from the hands of the people into the hands of nine Supreme Court Justices. I wholeheartedly believe that the Alabama Constitution should have an equal-protection clause, but I do not believe in obtaining it by a method that would turn this Court into an autonomous super-legislature. ...’
“The Alabama Supreme Court has continued to hold fast to this interpretive philosophy of judicial restraint. And, as it must be, this philosophy is at the heart of the various rules and methods of constitutional interpretation that have been adopted by the Alabama appellate courts.”
71 Ala. Law. at 289-90.
As fervently as I desire to protect the fundamental property rights of Alabamians, §§ 23 and 235 of the Alabama Constitution simply do not make a regulatory “taking” compensable. It would be unwise to throw to the wind the caution set forth by this Court in James and declare that *41 §§23 and 235 of our Constitution makes regulatory “takings” compensable. Such an “interpretation” of the Alabama Constitution would not be based on the text of the Constitution, but upon what I believe the law ought to be. As set forth by Justice Houston in his special writing in Melof, supra, set forth at length in Ayers’s article quoted above, the people of Alabama, by ratifying the Alabama Constitution, have established a paper boundary— the Constitution — that this Court must not cavalierly breach based on what it personally desires. Declaring a constitutional right where one does not exist, no matter how much I desire it, would violate my principles of judicial restraint, and turning a blind eye to the express for-public-works limitation in our pre-zoning 1901 constitutional provision would violate my principles of strict constructionism.
Next, I also write to express that this Court’s decision in Town of Gurley v. M & N Materials, Inc., [Ms. 1110439, 1110507, December 21, 2012] 143 So.3d 1 (Ala.2012), does not bar M & N from seeking relief from the Town’s zoning regulations under alternate legal theories available to M & N. First, M & N could have maintained its claim that it initially filed under the Fifth Amendment to the United States Constitution. M & N voluntarily dismissed its Fifth Amendment claim and proceeded only under the Alabama Constitution, thereby forgoing any protections afforded M & N under the federal Constitution. In fact, M & N must seek compensation through any procedures a State may have provided for doing so before its Fifth Amendment claim is ripe for adjudication; in other words, M & N must be denied just compensation before it has a Fifth Amendment claim. See Williamson Cnty. Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (“A ... reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation .... Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.”); and San Remo Hotel, L.P. v. City & County of San Francisco, California, 545 U.S. 323, 346, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (“The requirement that aggrieved property owners must seek ‘compensation through the procedures the State has provided for doing so,’ [Williamson County,] 473 U.S., at 194, does not preclude state courts from hearing simultaneously a plaintiffs request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution.”); see also Kenneth B. Bley, Use of the Civil Rights Act to Recover Damages in Land Use Cases, SM040 ALI-ABA 207 (American Law Institute 2007) (also published in Inverse Condemnation and Related Government Liability: The Response from State and Federal Courts, Legislatures, and Initiatives, and How It Affects Your Client Today (American Law Institute 2007)).
Second, M & N may refile its claims for a declaratory judgment and injunctive relief that were dismissed without prejudice by the trial court. In an amended complaint filed by M & N in the trial court, M & N requested a declaratory judgment and injunctive relief on the basis that the zoning ordinance at issue in this case was “void, invalid, and/or unconstitutional.” M & N’s claim challenged as unconstitutional the Town’s use of its police power, not its *42 use of its conferred power of eminent domain.
In Haas v. City of Mobile, 289 Ala. 16, 20, 265 So.2d 564, 567 (1972), this Court stated: “It is well established in our jurisdiction that zoning is a legislative act, Ball v. Jones, 272 Ala. 805, 132 So.2d 120 [(1961)], which rests on the exercise of police powers of a municipality, Fleetwood Development Corp. v. City of Vestavia Hills, 282 Ala. 439, 212 So.2d 693 [ (1968) ].” See also Leary v. Adams, 226 Ala. 472, 474, 147 So. 391, 392 (1933) (“The authority for zoning laws is found within the bounds of the police power....”); Ziegler, Rathkopfs The Law of Zoning & Planning § 1:2 (“Police power in the land-use control context encompasses zoning and all other government regulations which restrict private owners in their development and use of land.”).
This Court has distinguished between an exercise of a municipal corporation’s police power and the exercise of its conferred power of eminent domain and the remedies available to a property owner in relation to a municipal corporation’s exercise of those powers. In City of Mobile v. McClure, 221 Ala. 51, 127 So. 832 (1930), the City of Mobile cut down a tree situated on property the City of Mobile did not own but that was adjacent to a street it did own; the owner of the property upon which the tree was situated sought damages. In discussing the difference between a municipality’s police power and its conferred power of eminent domain, this Court stated:
“The fundamental questions of law which are involved have been settled in this state, and need no further discussion. Briefly stated, they are: (1) That if the tree was cut by the city while engaged in the construction or enlargement of the works, highways, or improvements of the city, and the property of the lot owner is thereby injured or destroyed, the city is liable in damages to the extent of an amount which would award just compensation therefor. Const. § 235; McEachin v. Tuscaloosa, 164 Ala. 263, 51 So. 153 [ (1909) ]; Birmingham v. Graves, 200 Ala. 463, 76 So. 395 [ (1917) ]. (2) That if the tree is cut in the exercise of the police power of the city, in caring for the health, comfort, and general welfare of the inhabitants thereof, and was not an arbitrary, corrupt, or a manifest abuse of the right of such police power, and not rendered in an improper or negligent manner, the city is not liable in damages for doing so. Birmingham v. Graves, supra; Southern Bell v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am. St. Rep. 930 [ (1896) ]; 4 McQuillin, Municipal Corporations (2d Ed.) § 1431; 38 Cyc. 528.”
221 Ala. at 52, 127 So. at 833. This Court later recognized the same principle in Jefferson County v. Southern Natural Gas Co., 621 So.2d 1282, 1287-88 (Ala.1993):
“Although there is no Alabama case directly on point, we note that there is a distinction between the ‘taking’ of or ‘injury’ to property pursuant to police powers and a ‘taking’ of or ‘injur/ to property that is compensable under § 235. For example, when the property taken is itself a nuisance, so that the authority must act, then that taking would be within the exercise of the police power and would not be compensable if it was not achieved in an arbitrary or corrupt manner and did not amount to an abuse of the police power. See, e.g., City of Mobile v. McClure, 221 Ala. 51, 127 So. 832 (1930); City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395 (1917). However, if the authority is enlarging or improving something, e.g., a highway or a creek, and in achieving that enlargement or improvement it must ‘take’ or ‘injure’ property that is *43 not itself a nuisance or is not the reason for the project, then that ‘taking’ of or ‘injury’ to the property would be constitutionally compensable. See City Council of Montgomery [ v. Maddox, 89 Ala. 181, 7 So. 438 (1890) ]; see, also, McEachin v. Mayor of City of Tuscaloosa, 164 Ala. 263, 51 So. 153 (1909); Town of Avondale v. McFarland, 101 Ala. 381, 13 So. 504 (1893); Panhandle Eastern Pipe Line Co.[ v. State Highway Comm’n of Kansas, 294 U.S. 613, 622, 55 S.Ct. 563, 567, 79 L.Ed. 1090 (1935) ].”
Based on the above cases, a property owner may challenge a municipal corporation’s actions that the owner alleges are an abuse of its police power. Such a challenge would not be an inverse-condemnation action unless the municipal corporation has taken property, under its conferred power of eminent domain, “by the construction or enlargement of its works, highways, or improvements.” However, in the present case, the Town did not exercise its conferred power of eminent domain by the construction or enlargement of its works, highways, or improvements; instead, the Town exercised its police power in enacting the at-issue zoning ordinance. See Com v. City of Lauderdale Lakes, 816 F.2d 1514, 1517-19 (11th Cir.1987) (recognizing a distinction in Florida law between a municipal corporation’s police power and its conferred power of eminent domain).
It is well established under Alabama law that a property owner may challenge the constitutionality of a zoning ordinance passed pursuant to a municipal eorporation’s police power. See Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 159 (Ala.2000) (determining that certain provisions of a zoning ordinance passed by a municipality were arbitrary and capricious and striking down those provisions). In fact, M & N indicated in its brief filed on original submission that its constitutional challenge of the at-issue zoning ordinance was an alternative claim to its inverse-condemnation claim and that its constitutional challenge could be reinstated if the trial court’s judgment in favor of M & N on M & N’s inverse-condemnation claim was reversed. The trial court’s judgment in favor of M & N on M & N’s inverse-condemnation claim has been reversed; thus, M & N is free to refile its constitutional challenge to the at-issue zoning ordinance. M & N would be afforded the relief it seeks if it were to prevail on its constitutional challenge of the at-issue zoning ordinance.
Lastly, I write to respond to Justice Murdock’s substituted dissent. Initially, I note that Justice Murdock’s dissent is entirely dependant upon distinguishing Willis v. University of North Alabama, 826 So.2d 118 (Ala.2002), in which this Court held that “§ 23 applies when a physical taking of the property in question has occurred.” 143 So.3d at 15 (interpreting Willis).[4], Ignoring Willis, Justice Mur-dock concludes that the plain language of § 23 makes compensable a regulatory “taking.” Justice Murdock’s erroneous conclusion that § 23 makes compensable regulatory takings leads him to the mis *44 guided conclusion that § 23 applies to municipal corporations.
First, I will address Justice Murdock’s position that Willis does not apply in this case because it is factually distinguishable. On original submission in Town of Gurley, a majority of this Court affirmed this Court’s interpretation of § 23 in Willis that § 23 does not make compensable regulatory “takings.” In Town of Gurley, a majority of this Court rejected Justice Murdock’s attempt to distinguish Willis from the present case and held as follows:
“In Willis, a property owner owned property across the street from a parking lot owned by the University of North Alabama (‘UNA’). UNA built a multilevel parking deck on its parking lot; it was assumed that the construction of the parking deck reduced the value of the property owner’s property. As a result, the property owner ‘filed an inverse-condemnation action against UNA, based on the allegation that UNA “took” his property without “just compensation,” in violation of § 23....’ 826 So.2d at 119. This Court held that even though the property owner’s property was injured, ‘since no portion of Willis’s property was “taken,” or applied to public use by UNA, UNA was not required to compensate Willis under § 23.’[5] 826 So.2d at 121. Also significant to the holding in Willis was the overruling of certain holdings in Foreman v. State, 676 So.2d 303 (Ala.1995), as follows:
“ ‘Foreman v. State, 676 So.2d 303 (Ala.1995), involved an inverse-condemnation action in which compensation was sought under § 23 of the Constitution of Alabama of 1901. In Foreman, this Court held that in “ ‘inverse condemnation actions, a governmental authority need only occupy or injure the property in question.’ ” 676 So.2d at 305 (quoting Jefferson County v. Southern Natural Gas Co., 621 So.2d 1282, 1287 (Ala.1993)) (emphasis added in Foreman). However, in Jefferson County, the Court was applying § 235 of the Alabama Constitution, not § 23. As we have already noted, § 235 does not apply to the State. Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930). To the extent that Foreman (and Barber v. State, 703 So.2d 314 (Ala.1997), which relied on Foreman), held that under § 23 “ ‘a governmental authority need only occupy or injure the property in question,’ ” those holdings are incorrect and are hereby overruled.’
“Therefore, it is clear, under the plain language of § 23 and under Willis, that the trial court properly held that § 23 does not apply in this case. It is undisputed that there was not an actual taking in this case and that M & N has complained only of administrative and/or regulatory actions taken by the Town. Willis makes clear that § 23 applies when a physical taking of the property in question has occurred. In the pres *45 ent case, M & N does not allege that there was a physical taking of the property in question.”
143 So.3d at 15 (footnote omitted). Justice Murdock’s dissent does not address the significant holding in Willis overruling in part Foreman v. State, 676 So.2d 303 (Ala.1995). We held in Willis, by overruling Foreman in part, that under § 23 a state governmental authority must occupy property in order to constitute a taking; injury to the property caused by anything other than physical invasion is not compensable under the language of § 23. Whether the facts of Willis are distinguishable from the present case is inconsequential; the holdings of Willis apply, and no effort to address the significance of those holdings in that ease has been made.
Justice Murdock’s reliance upon the unestablished proposition that Willis does not apply to the present case and, thus, that § 23 makes compensable regulatory “takings” appears to lead him to struggle with the unfounded notion that § 235 provides less of a limitation upon the power of eminent domain than does § 23. This unfounded notion is a consequence of the refusal to apply the interpretation of § 23 set forth in Willis. In other words, if Justice Murdock’s view that Willis does not apply is accepted and regulatory “takings” are compensable under § 23 (a position that was rejected on original submission by this Court), then § 23 would make compensable regulatory “takings,” whereas § 235 does not make compensable regulatory “takings.” Based on that unestablished legal position, the argument then follows that the legislature could not have intended to put less of a limitation upon the power of eminent domain when wielded by a municipal corporation than when wielded by the State. However, as stated above, this argument is premised upon refusing to accept the clear ruling in Willis, which a majority of this Court recognized in Town of Gurley. Therefore, giving Willis its proper weight as binding precedent, the foundation of Justice Mur-dock’s dissent crumbles.
Moreover, Justice Murdock’s dissent would render meaningless § 235; such an interpretation of our Constitution is prohibited by our rules of constitutional interpretation. As this Court noted in Town of Gurley:
“[T]his Court set forth the following concerning the power of eminent domain and its limitations in Gober v. Stubbs, 682 So.2d 430, 433-34 (Ala.1996):
“ ‘The power of eminent domain does not originate in Article I, § 23. Instead, it is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain. This Court stated in Steele v. County Commissioners, 83 Ala. 304, 305, 3 So. 761, 762 (1887):
“ ‘ “The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in, and belonging to every sovereign State. The only qualification of the [inherent] right is, that the use for which private property may be taken shall be public.... The constitution [of our State] did not assume to confer the power of eminent domain, but, recognizing its existence, [further] limited its exercise by requiring that just compensation shall be made.”
“ ‘In order for an exercise of eminent domain to be valid under § 23, two requirements must be met. See Johnston v. Alabama Public Service Commission, 287 Ala. 417, 419, 252 So.2d 75, 76 (1971). First, the property must be taken for a public use and, with one exception inapplicable here, *46 it cannot be taken for the private use of individuals or corporations. This first restriction is no more than a restatement of a requirement inherent in a sovereign’s very right to exercise eminent domain. See Steele, 83 Ala. at 305, 3 So. at 762. Second, “just compensation [must be paid] for any private property taken.” Johnston, 287 Ala. at 419, 252 So.2d at 76.’
“(Footnotes omitted.)”
143 So.3d at 14-15 (emphasis added). As set forth in Town of Gurley, quoting Gober v. Stubbs, 682 So.2d 430, 433-34 (Ala.1996), the power of eminent domain is an inherent power of the State, and the Constitution limits the State’s exercise of that power.
The State may confer its inherent power of eminent domain upon a municipal corporation. In fact, in City of Birmingham v. Brown, 241 Ala. 203, 207, 2 So.2d 305, 308 (1941), this Court held:
“A municipal corporation has no inherent power of eminent domain, and can exercise it only when expressly authorized by the legislature, and statutes conferring the right must be strictly construed in favor of the landowner. New & Old Decatur Belt, etc., R.R. Co. v. Karcher, 112 Ala. 676, 21 So. 825 [ (1896) ]; Sloss-Shejfield S. & I. Co. v. O’Rear, 200 Ala. 291, 76 So. 57 [ (1917) ]; Denson v. Alabama P. I., [220 Ala. 433, 126 So. 133 (1930)]; 10 R.C.L. page 197.”
Therefore, the only manner in which a municipal corporation may exercise the power of eminent domain is if the State has conferred upon it the power to do so. The State has, under numerous statutes, invested municipal corporations with the privilege of taking property for public works; that privilege is limited by § 235.
Justice Murdock’s dissent concludes that because the State conferred the power to zone upon the Town, M & N’s inverse-condemnation action for the alleged regulatory “taking” may be brought under § 23. Justice Murdock does not explain how granting a municipal corporation the power to zone is the equivalent of conferring upon a municipal corporation the power of eminent domain. A taking by the power of eminent domain involves a change in ownership of the property taken, whereas there is no change in ownership when a property is subject to a zoning ordinance. Regardless, Justice Murdock’s dissent ignores the structure of the Alabama Constitution and would render useless § 235.
In Hornsby v. Sessions, 703 So.2d 932, 939 (Ala.1997), this Court held:
“ ‘A constitutional provision, as far as possible, should be construed as a whole and in the light of [the] entire instrument and to harmonize with other provisions, [so] that every expression in such a solemn pronouncement of the people is given the important meaning that was intended in such context and such part thereof.’ State Docks Commission v. State ex rel. Cummings, 227 Ala. 414, 417,150 So. 345, 346 (1933).”
Further, this Court has also held that “[e]ach section of the Constitution must necessarily be considered in pari materia with all other sections. Opinion of the Justices, 333 So.2d 125 (Ala.1976).” Jefferson Cnty. v. Braswell, 407 So.2d 115, 119 (Ala.1981); see also House v. Cullman Cnty., 593 So.2d 69, 72 (Ala.1992) (“This rule applies with particular force in the construction of provisions of the Constitu-tion_”).
In order to ensure that we do not violate the above principles, we must consider the structure of the Constitution. Section 23 falls under Article I of the Constitution, *47 which is entitled “Declaration of Rights”; § 23 states:
“That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner; and, provided, that the right of eminent domain shall not be so construed as to allow taxation or forced subscription for the benefit of railroads or any other kind of corporations, other than municipal, or for the benefit of any individual or association.”
(Emphasis added.) Section 36, Ala. Const. 1901, the last section in Article I, states:
“That this enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate.”
(Emphasis added.) As made plain in the language of § 36, the Declaration of Rights set forth in Article I, including the limitations on the power of eminent domain in § 23, applies to the State generally, not only to the legislature. Section 235 falls under Article XII, which is entitled “Corporations”; § 235 states:
“Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction.”
Section 235 is a further limitation upon the eminent-domain power specifically applicable to corporations, including municipal corporations.
When the structure of the Constitution is considered and all parts are read in harmony, § 235 clearly provides the avenue by which to bring an inverse-condemnation action against a municipal corporation “invested with the privilege of taking property for public use,” such as the Town. The position that § 23 applies to the State and § 235 applies to municipal corporations was stated in Duy v. Alabama Western R.R., 175 Ala. 162, 57 So. 724 (1911), in which this Court held:
“As to the state itself, the sole restraint in the particular now important is Const. § 23, wherein it is provided that ‘private property shall not be taken for, or applied to, public use, unless just compensation be first made therefor.’ Section 235 is addressed to the restraint of ‘municipal and other corporations and individuals invested with the privilege of taking property for public use.’ This latter section does not apply to the state itself in the exercise of its sovereign power in restraint of which, in so far as we are now concerned, Const. § 23, *48 alone operates. It was ruled in Jackson v. Birmingham F. & M. Co., [154 Ala. 464, 45 So. 660 (1908) ], that a property-owner whose lot abutted on a street had a special, private property right in the street, which could not be taken, by a vacation of the street, without compensation, if such vacation; by the state, operated to deprive the property of a reasonably convenient means of access thereto. In the Jackson Appeal, as appears, consideration was alone given the validity vel non of the legislative act as affected by Const. 1875, art. 1, § 24; Const.1901, § 23. No account was or could be taken of section 285, or of its predecessor in the Constitution of 1875, for, as stated, that section of the Constitution did not restrict the state itself in the exercise of its power in the premises.”
175 Ala, at 173-75, 57 So. at 727-28. . See also Markstein v. City of Birmingham, 286 Ala. 551, 554, 243 So.2d 661, 662 (1971) (“We note that section 235, which begins ‘Municipal and other corporations and individuals invested with the privilege of taking property for public use, ...’ does not apply to eminent domain proceedings initiated by the State. State v. Barnhill, 280 Ala. 574, 196 So.2d 691 [ (1967) ]; Finnell v. Pitts, 222 Ala. 290, 132 So. 2 [ (1930) ].”).
Justice Murdock’s dissent violates the above principles by rendering meaningless § 235. Parties bringing an inverse-condemnation action against a municipal corporation would be free to disregard § 235 entirely in favor of § 23. Sections 23 and 235 are not alternate avenues by which to receive just compensation but must be read in harmony, and each must be given effect. Reading §§23 and 235' in pari materia, one must conclude that any inverse-condemnation action against the municipal corporation using its conferred power of eminent domain must.be brought pursuant to § 235, which does not make compensable regulatory “takings.”
I sympathize with the notion that our principles of judicial restraint and strict constructionism have produced an undesirable result in this case. However, we must not abandon our principles to obtain a desired result in this one instant. Let us heed the following warning set forth in George Washington’s Farewell Address of 1796:
“If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the Constitution designates. But let there be no change by usurpation; for though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed. The precedent must always greatly overbalance in permanent evil any partial or transient benefit, which the use can at any time yield.”

. I note that this Court has not been asked to overrule Willis either in the parties' briefs or at oral argument; in fact, counsel for M & N stated at oral argument that M & N was not requesting that Willis be overruled. In Clay Kilgore Construction, Inc. v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala.2006), this Court stated:
"[W]e are not inclined to abandon precedent without a specific invitation to do so. 'Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.’ Moore[ v. Prudential Residential Servs. Ltd. P’ship], 849 So.2d [914,] 926 [(Ala.2002)].”

. Section 23 states, in pertinent part:
"That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected....”
(Emphasis added.) Section 235 slates, in pertinent part:
"Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."
(Emphasis added.)